CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

10/11/2019

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ATLANTIC COAST PIPELINE, LLC, ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> 10.61 ACRES, MORE OR LESS, IN ) <br> LOVINGSTON DISTRICT, NELSON ) <br> COUNTY, VIRGINIA et al., ) <br>     Defendants. ) | Civil Action No. 3:18-cv-00071 <br><br> <u>MEMORANDUM OPINION & ORDER</u> <br><br> By:   Joel C. Hoppe <br>        United States Magistrate Judge |

This matter is before the Court on Defendant Nelson County Creekside, LLC's ("NCC") Motion to Disburse Funds that have been deposited with the Court under Rule 71.1(j) of the Federal Rules of Civil Procedure. ECF No. 31 ("Mot. to Disburse"). The funds are proceeds from a settlement between Plaintiff Atlantic Coast Pipeline, LLC ("ACP"), and NCC in the underlying action. Non-parties Charles M. Lollar, Charles M. Lollar Jr., and the law firm of Lollar Law, PLLC (collectively "Lollar") oppose NCC's motion on grounds that Lollar are entitled to a portion of the settlement proceeds as attorney's fees. ECF No. 34. The motion has been fully briefed, ECF Nos. 31, 34, 35, 43, 44, and the Court held a hearing on July 1, 2019, at which the parties and Lollar appeared by counsel. Having considered the briefs, the arguments of counsel, and the relevant law, I find that the Court may exercise ancillary jurisdiction over Lollar's claim for attorney's fees and, thus, that distribution of the settlement proceeds is premature.

I. Background

This case involves a condemnation action filed in August 2018 through which ACP sought to acquire an easement in certain real property owned by NCC. *See generally* Compl. 1–8, ECF No. 1. In June 2016, two years before ACP filed its lawsuit, Demian Jackson retained

1

Lollar on behalf of NCC to represent NCC in negotiating the easement. *See* Lollar Resp. in Opp'n to Mot. to Disburse Funds ("Lollar Opp'n") Ex. A, ECF No. 34-1. The engagement letter between Jackson and Lollar contemplated that Lollar would receive a contingency fee of one-third of any recovery NCC obtained above any initial written offer by ACP. *Id.*

In their brief, Lollar assert that during the next several months, counsel negotiated with ACP over both the location of the proposed easement and appropriate compensation for NCC. Lollar Opp'n ¶¶ 2–19, ECF No. 34. The relationship between Jackson and Lollar gradually deteriorated, and in the summer of 2018, Jackson terminated Lollar's representation and retained new counsel. *See id.* ¶¶ 21–22. In early 2019, NCC, via its new counsel, reached a settlement agreement with ACP. *See* Joint Mot. to Re-Open Case 1, ECF No. 25. Thereafter, NCC was notified that Lollar had placed an attorney's lien on the settlement proceeds pursuant to Virginia Code § 54.1-3932. *Id.* Accordingly, the parties moved to deposit the settlement proceeds of $305,000 into this Court's registry pending efforts to resolve the lien. *See* Joint Mot. to Deposit Settlement Funds, ECF No. 27. The Court granted that request on March 11, 2019. ECF No. 28.

In April 2019, NCC filed the present motion to disburse the funds from the Court's registry. NCC argues that Lollar are not entitled to a portion of the funds because they do not have a valid lien under Virginia law and, even if they did, the Court does not have ancillary jurisdiction to enforce the lien. Mot. to Disburse ¶¶ 3–5. Lollar filed an opposition to NCC's motion asserting that they have a state statutory lien and a federal common law lien over the settlement proceeds. Lollar Opp'n 6; Notice of Att'y's Charging Lien, ECF No. 40. Lollar argue that this Court has ancillary jurisdiction to hear a fee dispute over the validity of the liens and, in the alternative, that the Court has jurisdiction to enforce Lollar's equitable claim to the proceeds.

II. Discussion

ACP filed this eminent domain action under Rule 71.1 and the Natural Gas Act, 15 U.S.C. § 717f(h).Compl. 2. Rule 71.1 "governs the procedure in a condemnation action." *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 821 (4th Cir. 2004). NCC's motion to disperse arises principally under Rule 71.1(j). Under that subsection, the plaintiff must "deposit with the court any money required by law as a condition to the exercise of eminent domain and may make a deposit when allowed by statute." Fed. R. Civ. P. 71.1(j)(1). The Court, in turn, is "to distribute the deposit and . . . determine and pay compensation." Fed. R. Civ. P. 71.1(j)(2). Lollar argue that they are entitled to that portion of the funds representing compensation owed for services they performed for NCC. Lollar argue that, under Virginia law, they obtained a lien over the settlement proceeds and, in the alternative, have an equitable claim to fees and costs.

As a threshold matter, I must determine whether this Court has jurisdiction over the subject matter of Lollar's claims. Lollar is not a party to this action, and their claim for relief does not arise directly out of ACP's condemnation action. Thus, I must consider whether Lollar's claim is so related to that action that it falls within this Court's supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a); *see Swepi, LP v. Mora Cty.*, 81 F. Supp. 3d 1075, 1143 (D.N.M. 2015) ("The term 'supplemental jurisdiction' is now used to refer collectively to the common-law doctrines of ancillary jurisdiction, pendent jurisdiction, and pendent-party jurisdiction." (quoting 28 U.S.C. § 1367) (collecting cases)).

Though the Court has not found any case law mirroring the facts presented in this case, the United States Court of Appeals for the Fourth Circuit and district courts within the Fourth Circuit have held that district courts may exercise supplemental (or ancillary) jurisdiction over attorney's fees disputes that are related to the underlying action. *See, e.g.*, *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 750–51, 754 (4th Cir. 2003) (affirming district court's finding that it had ancillary jurisdiction over defendant's motion for a determination on attorney's fees); *In re Outsidewall Tire Litig.*, 52 F. Supp. 3d 777, 783 (E.D. Va. 2014) ("There can be no substantial doubt that this court has ancillary or supplemental jurisdiction to resolve this fee dispute and to value the lien filed here under Virginia law."), *vacated and remanded on other grounds*, 636 F. App'x 166, 168–72 (4th Cir. 2016); *In Re Serzone Prods. Liab. Litig.*, MDL No. 1477, 2004 U.S. Dist. LEXIS 28296, at *4–6 (S.D. W. Va. Nov. 18, 2004) (exercising supplemental jurisdiction over attorney's fee dispute in a class action case). Other circuit courts of appeals have reached similar conclusions. *See, e.g.*, *Goyal v. Gas Tech. Inst.*, 718 F.3d 714, 717 (7th Cir. 2013) ("District courts may exercise supplemental jurisdiction over disputes between attorneys and clients concerning costs and fees for representation in matters pending before the district court."); *Kalyawongsa v. Moffett*, 105 F.3d 283, 287–88 (6th Cir. 1997) ("[T]he federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action.").

Applying these principles, jurisdiction exists if Lollar's request for attorney's fees is "so related to claims in the [underlying] action . . . that [it] form[s] part of the same case or controversy." 28 U.S.C. § 1367(a). Although Lollar's representation was terminated prior to ACP filing the underlying condemnation action, Lollar's efforts to negotiate the value of the

4

easement prior to litigation were fundamental parts of the condemnation litigation. A prerequisite to asserting a claim under the Natural Gas Act—the federal statue under which ACP sought relief—is that the prospective condemner attempted to negotiate a fair price with the landowner. *See* 15 U.S.C. § 717f(h) (requiring that a party be "unable to agree with the owner of property to the compensation to be paid for" the easement before filing suit in federal court); *Mountain Valley Pipeline v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 365 (4th Cir. 2019). Indeed, as the basis for jurisdiction, the Complaint alleges, in part, that ACP, "despite negotiation efforts, has been unable to acquire by contract, or has been unable to agree with the Owner as to the compensation to be paid for, the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas." Compl. 2 (citing 15 U.S.C. § 717f(h)). The negotiations that Lollar initiated in 2016 continued between the parties after the lawsuit was filed in 2018. Thus, Lollar's claim for pre-litigation attorney's fees is part of the same case or controversy as the condemnation action. Accordingly, I find that this Court may exercise jurisdiction over the attorney's fees dispute.

NCC argues that the decisions from district courts within this circuit are distinguishable because they involve claims by attorneys who represented parties in the underlying litigation rather than only in pre-litigation negotiation, as Lollar did for NCC in this case. This distinction is important, according to NCC, because the former scenario provides the Court "the opportunity to observe the attorney during the course of litigation" and therefore places it in "a better position to decide upon his fee." Def.'s Reply Br. 2 (asserting that the presiding judges in these cases "justified" the federal court's "involvement because [the court] had the opportunity to observe the attorney . . . and, therefore, was in a better position to decide upon [counsel's] fee than a state court judge who had not"), ECF No. 35. This distinction, however, does not overcome the more

5

substantial considerations that weigh in favor of exercising supplemental jurisdiction in this case. *Cf.* 28 U.S.C. § 1367(c) (describing the circumstances where a district court "may decline to exercise supplemental jurisdiction over a claim"). This Court is familiar with the litigation in this case and others of a similar nature. This familiarity provides context for the Court to evaluate the reasonableness of pre-filing negotiations and other work. Additionally, if the attorney's fees dispute were brought in state court, that court would not have this important context to draw upon in evaluating Lollar's claim. Thus, the Court's familiarity with the case and the likely efficiency to be gained by resolving Lollar's request for attorney's fees in this Court, rather than shifting it to a separate proceeding in a state court, weigh more heavily in favor of exercising jurisdiction. Accordingly, I find that Lollar's claim to collect fees for their work is sufficiently related to the underlying action to fall within this Court's jurisdiction, and that there is no reason to decline jurisdiction under 28 U.S.C. § 1367(c).

Having concluded that this Court has subject-matter jurisdiction over Lollar's request for fees, I must next determine the proper vehicle for considering their request. Lollar first asserts that they have a state statutory lien under Virginia Code § 54.1-3932. That section provides, in pertinent part,

> Any person having or claiming a right of action sounding in tort, or for liquidated . . . damages on contract or for a cause of action for annulment or divorce, may contract with any attorney to prosecute the same, and the attorney shall have a lien upon the cause of action as security for his fees for any services rendered in relation to the cause of action or claim.

Va. Code § 54.1-3932(A).

Lollar argue that because NCC contracted with them to represent it in the negotiations preceding this condemnation action, they have acquired a statutory lien over the proceeds of the settlement. I disagree. Virginia's attorney's lien statute applies only where an attorney has

6

entered into a contract with a client who has or claims "a right of action sounding" in tort, contract, annulment, or divorce. *Id*. It is not the attorney's contract with the client, rather it is the client's contract claim in the underlying action that may form the basis for a lien for attorney's fees incurred related to that action. *See id.* Lollar does not identify any "right of action" sounding in tort, contract, or marital separation that NCC had against another party. At most, they argue that NCC's disagreement with ACP could have given rise to a cause of action for inverse condemnation, which is considered a contract action under Virginia law. *See Richmeade, L.P. v. City of Richmond*, 594 S.E.2d 606, 608 (Va. 2004). The parties' disagreement did not, however, give rise to such an action in this case. In Virginia, an "inverse condemnation" action allows an aggrieved landowner to sue the government for breach of implied contract "when the government fail[s] to condemn land taken for public purposes." *Id.* NCC is not claiming a right of action for inverse condemnation.

Alternatively, Lollar argue that "Virginia Courts have applied § 54.1-3932 in much broader [contexts] that just tort, divorce, and contract cases." Lollar Opp'n 8. In support, they cite to a single unpublished decision from the Virginia Court of Appeals in which the court was asked to enforce an attorney's lien filed by a law firm that formerly represented a party in a divorce proceeding. *Id.* at 8–9 (citing *Mayo v. Mayo*, No. 1337-07-4, 2008 WL 842416 (Va. Ct. App. Apr. 1, 2008)). The state appellate court declined to rule on the attorney's lien issue because it found that its limited jurisdiction did not include a contract dispute between an individual and a law firm, and it transferred the case to the Supreme Court of Virginia. *Mayo*, 2008 WL 842416, at *3–4. This decision appears to apply the plain language of § 54.1-3932 to a fee dispute in a divorce proceeding, rather than expand the scope of the statutory lien. It does not

7

support Lollar's argument that § 54.1-3932 has been extended to cases, like this one, where the attorney's former client does not claim a right of action in tort, contract, annulment, or divorce.[1]

Lollar also argue that they can recover fees via an equitable remedy. I agree. In Virginia, an attorney may recover fees, under a *quantum meruit* theory, for "the reasonable value of the services rendered." *See Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d 282, 286 & n.4 (Va. 1977). Here, Lollar primarily argue that they should be entitled to recover not for the "reasonable value" of their services, but rather on their original contract with Jackson that provides for a contingency fee of one-third of any recovery NCC obtained above any initial written offer by ACP. *See* Lollar Opp'n 8 (citing Lollar Opp'n Ex. A). Virginia law, however, does not permit recovery of contingency fees in the circumstances alleged. In *Heinzman*, the Supreme Court of Virginia held that where "an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who effects a recovery, the discharged attorney is entitled to a fee based upon *quantum meruit* for services rendered prior to discharge." 234 S.E.2d at 286 (footnote omitted). The discharged attorney is not entitled to recovery under the original contract. *See id*.[2] Thus, Lollar may be able to assert a valid claim under *quantum meruit* for the services they rendered, and this Court may exercise jurisdiction over that claim.

---

[1] Lollar also purport to assert a "charging lien" arising under federal common law. Most of the decisions on which Lollar rely, however, speak to liens arising by operation of federal or state statutory law. Lollar Opp'n 7–8. There are some federal district court cases that suggest an attorney can acquire a lien on fees owed to a client under federal common law, *United States v. Hudson*, 39 F. Supp. 797, 802 (D. Mont. 1941) ("A lien on the proceeds of litigation should be declared in favor of an attorney in a cause where equitable considerations require that such lien be recognized."); *see also United States v. Jacobs*, 187 F. Supp. 630, 636 (D. Md. 1959) ("[P]rinciples of equity authorize this court to allow [the defendant's] attorneys out of the [money] now in custody and control of this court a reasonable fee for their services in creating that fund."), but those decisions seem to be premised more on general principles of equity rather than a distinct procedural device, such as a lien. Because I conclude below that Lollar may be entitled to their fees through an equitable claim arising under state law, I need not decide whether they may also have a claim under federal common law.

[2] At bottom, *Heinzman* holds that an attorney terminated without cause may recover only in equity, rather than under a breach-of-contract theory. Thus, my decision here is limited to a finding that, to the extent

8

III. Conclusion

For the foregoing reasons, NCC's Motion to Disburse Funds, ECF No. 31, is **DENIED without prejudice**. It is hereby **ORDERED** that within twenty-one (21) days from the date of this Order, Lollar shall file a petition stating the basis for their request for fees and the amount of fees sought. NCC may submit a response to Lollar's petition within twenty-one (21) days of that filing, and Lollar may submit a reply within seven (7) days of any response brief. The parties are encouraged to confer regarding Lollar's claim for attorney's fees.

ENTER: October 11, 2019

Joel C. Hoppe
U.S. Magistrate Judge

---

Lollar was terminated—as they allege—without cause, they are only entitled to recover the reasonable value of their services and not the contingency fee under the original contract. This Court's decision does not make any factual findings about whether Lollar were terminated without cause or the value of the work performed during their representation. Any decision on those issues must wait until NCC and Lollar have had further opportunity to present evidence and argument in support of their positions.