IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION
Case No.: 3:18-cv-00071-NKM-JCH

| | |
|---|---|
| ATLANTIC COAST PIPELINE, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>10.61 ACRES, MORE OR LESS,<br>IN LOVINGSTON DISTRICT, NELSON<br>COUNTY, VIRGINIA, *et al.*,<br>*Defendants*. | **LOLLAR LAW'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISBURSE FUNDS AND BRIEF IN SUPPORT** |

**LOLLAR LAW PLLC'S MOTION AND MEMORANDUM
FOR RECOVERY OF ATTORNEY'S FEES IN QUANTUM
MERUIT FOR LEGAL SERVICES PERFORMED**

NOW COME Charles M. Lollar, Charles M. Lollar, Jr. and the law firm of Lollar Law, PLLC (collectively "Lollar" or the "Firm"), former counsel for Defendant Nelson County Creekside, L.L.C. ("Defendant"), and hereby move this Court for an award of attorney's fees and expenses in the amount of **$40,560.86**, and respectfully submit in support thereof this Memorandum for the Recovery of Attorney's Fees in *quantum meruit* for legal services performed.

**STATEMENT OF FACTS AND PROCEEDINGS**

Reference is made to paragraphs 1-23 of the Firm's response in opposition to Defendant's motion to disburse funds, Dkt. 34, setting forth facts relating to the engagement of Firm by Defendant through its managing member, Charlottesville attorney Demian K. Jackson ("Demian"), along with **Exhibits A-H**, all of which is incorporated in and made a part of this motion. The Firm's attorney Charles M. Lollar ("Chuck") diligently worked for Defendant from

1

his June 21, 2016 engagement through June 8, 2018, the day Demian advised Chuck that if he did not agree to void the terms of their signed engagement agreement (the "Contract") and replace them with Demian's new terms, then "whatever Power of Attorney (if any) remains is automatically explicitly revoked at [06-8-18, by 5 PM EST}". This communication was conveyed by email, not in a face-to-face meeting or ever via a telephone call, because Demian wanted a paper trail in his efforts to prevent Chuck from realizing the bargain they negotiated two years prior. The termination email was sent by Demain the morning following Chuck's forwarding of an emailed increased offer of Plaintiff Atlantic Coast Pipeline, LLC ("ACP") to acquire a gas pipeline easement ACP was seeking from Defendant, for ▮▮▮▮. A summary of ACP's offers during the course of Chuck's representation of Defendant is very revealing:

(1) The **first** and *initial* ACP offer of ▮▮▮▮ was sent by letter from ACP's agent Doyle Land Services, dated October 19, 2016, addressed to "Nelson County Creekside LLC 106 Starvale Lane, Shipman,VA 22971" no copy of which was ever provided by Demian to Chuck (see attached **Exhibit I**);

(2) The **second** ACP offer of ▮▮▮▮ appears on an Offer Calculation Sheet ("OCS") dated July 21, 2017, with a Total Offer Amount, no copy of which was ever provided by Demian to Chuck (see first page of attached **Exhibit J**);

(3) The **third** ACP offer of ▮▮▮▮ appears as a marked-up increase on the OCS from ▮▮▮▮ then adds timber "double stumpage" o ▮▮▮▮, received by Chuck via August 9, 2017 email from ACP's agent Doyle Land Services (see attached **Exhibit J**);

(4) The **fourth** ACP offer of ▮▮▮▮ was received by Chuck via March 23, 2018 email from ACP's agent Doyle Land Services (see attached **Exhibit K**);

(5) The **fifth** ACP offer of ▮▮▮▮ was received by Chuck via June 7, 2018 email from ACP's agent Doyle Land Services (see attached **Exhibit L**).

2

In the summer of 2017, the Firm was not aware that ACP had conveyed any offers directly to Defendant or to Demian. On August 10, 2017, Chuck emailed ACP's agent Doyle Land Services seeking clarification as to when and how either of the second and third offers were conveyed to Defendant, as he was not aware of and never received a copy of the first offer from ACP or Demian until well after his June 8, 2018 termination. (see attached **Exhibit M**). Notwithstanding Chuck's requests to Demian that he tell anyone contacting him as an agent of ACP to contact Chuck as his counsel, direct communications continued between Demian and ACP's agents.

Three months prior, in March of 2017, Demian proposed to Chuck that "Once we receive the initial offer from Dominion, we would want to discuss a revised contingency percentage, some form of a cap, and/or hourly representation." (see attached **Exhibit N)**. At that time ACP had conveyed the ▓▓▓▓▓ *initial* offer to Defendant by letter dated six months prior. It became obvious that Demian was becoming more preoccupied with changing the written terms in the Contract than allowing Chuck as his counsel to focus his efforts on getting the highest offer possible from ACP.

The Firm had succeeded in obtaining increased ACP settlement amounts for other landowner clients through mediations with the Honorable Waugh Crigler of the McCammon Group, which at Chuck requests ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Following a meeting with Dominion Energy head counsel in Richmond on the afternoon of March 27, 2018, it became more apparent that the efforts to obtain a *second* move of the ACP easement alignment on Defendant's property would be very difficult, if not futile. Chuck then began focusing his efforts on what he had primarily been engaged by Demian to do: recover as much just compensation as he could to make Defendant whole for the involuntary acquisition of a gas easement. Chuck proposed

obtaining an appraisal of Defendant's property and scheduling a mediation. (see attached **Exhibit O)**.

In the spring of 2018 the attorney-client relationship deteriorated due to Demian's increased focus on the Firm's attorney's fees more than the additional value the Firm could bring to Defendant's just compensation case. Demian expressed the desire to keep the ongoing "complex communications" in writing via email rather than have regular telephone conversations. (see attached **Exhibit P)**.

Chuck continued his efforts to make the case for increased just compensation to Defendant, and requested a meeting with ACP's chief counsel for Dominion at the Starvale Lane, Shipman property, along with a mediation date with Judge Crigler. (see attached **Exhibit Q)**.

On June 7, 2018, the day before he was terminated as counsel, Chuck asked Demian for a response to ACP's *fifth* offer ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), but never received a response. Shortly thereafter, ACP's attorney provided Chuck with a copy of ACP's appraisal of the just compensation due Defendant, which was valued a ▮▮▮▮, o▮ of the ▮▮▮▮ ACP offer Chuck had negotiated. (see attached **Exhibit R)**.

Subsequent to Demian's termination of the Firm, upon information and belief, mediation was scheduled with Judge Crigler and Demian settled with ACP for ▮▮▮▮. The Firm could have obtained that amount, and more, had it been allowed to schedule and proceed with mediation as it requested. Dkt. 27.

From June of 2016 to June of 2018, at Defendant's request, the Firm has devoted considerable time in pursuing, at Demian's request, not one but *two* movements of ACP's easement alignment on Defendant's property.

4

Under these circumstances, Demian's termination of the attorney-client representation Contract with the Firm, can only be qualified as "without cause."

A statement reflecting the time and incurred expenses by Chuck on behalf of the Firm (the "Fee Statement") is attached as **Exhibit S.** A Declaration by Chuck addressing the reasonableness of his customary fee rates and time is attached as **Exhibit T**. A Declaration by Charlottesville attorney Thomas E. Albro opining as to the reasonableness and necessity of the Firm's time, expenses and rates is attached as **Exhibit U.**

## APPLICABLE LAW

Notwithstanding Defendants assertions to the contrary, this Court has jurisdiction to resolve this fee dispute, applying Virginia law. *See In re Outsidewall Tire Litig.*, 52 F. Supp. 3d 777, 783 (E.D. Va. 2014), vacated and remanded on other grounds, 636 F. App'x 166 (4th Cir. 2016) (finding the court had ancillary or supplemental jurisdiction to resolve the attorneys' fee dispute and value the lien because "the action was filed and fully litigated here, and the lien was filed here") citing American Federation of Tobacco– *Growers v. Allen*, 186 F.2d 590, 592 (4th Cir. 1951). Under Virginia law, when "an attorney employed under a contingency fee contract is discharged without just cause and the client employs another attorney who effects a recovery, the discharged attorney is entitled to a fee based upon quantum meruit for services rendered prior to discharge" *Heinzman v. Fine, Fine, Legum & Fine*, 234 S.E.2d 282, 286 (Va. 1977) (noting that "quantum meruit is the most functional and equitable measure of recovery"). As recently as 2017, the Fourth Circuit Court of Appeals in *Gilbert LLP v. Tire Engineering and Distribution, LLC*, reaffirmed the quantum meruit analysis courts must apply when determining the fee lien a Virginia attorney working under a

5

contingency fee agreement is entitled to recover when a client terminates the representation without cause. 689 F. App'x 197, No. 16-1410 (4th Cir. 2017).

Courts use a three-step process to determine an award of attorney's fees. *McAfee v. Boczar,* 738 F.3d 81, 88 (4th Cir. 2013). First, a "*lodestar*" figure is determined by multiplying a reasonable hourly rate by the number of reasonable hours expended. Id. Next, fees are deducted from the *lodestar* amount for any "unsuccessful claims unrelated to successful ones." *Id*. Finally, some percentage of the remaining amount is awarded, depending on the degree of success enjoyed by the movant. *Id*.

In determining a reasonable hourly rate and number of hours, the court is guided by: (I) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill required to perform the services rendered; (4) the attorney's loss of other employment by accepting the case; (5) the customary fee for the work; (6) the attorney's expectations at the outset of the work; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community; (11) the nature and length of professional relationship with the client; and (12) attorney's fees awards in similar cases. *McAfee*, 783 F.3d at 88 n.5 (listing factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Fees may be awarded for multiple attorneys where there is no unreasonable duplication of work. *E.g., Hudson v. Pittsylvania Cty*., No. 4:11-cv-43, 2013 WL 4520023, at *6 (W.D. Va. Aug. 26, 2013), ajf'd, 774 F.3d 231 (4th Cir. 2014). In *Gilbert* the Fourth Circuit also expressly held that an upward adjustment of the loadstar figure is appropriate when an attorney was handling the matter under a contingent fee agreement. 689 F. App'x 197, No. 16-1410 (4th Cir. 2017). It is a well-

6

recognized rule in Virginia that an attorney many properly change a much larger fee where, as here, it is to be contingent than where it is not so. *County of Campbell v. Howard*, 112 S.E. 876, 885 (Va. 1922). This rule should be applied with more liberality when circumstances result in more difficult representation, such as where a client demands more favorable provisions to terms of engagement.

## LEGAL ARGUMENT

This Court has denied Defendant's Motion to Disburse Funds, and found that this Court may exercise jurisdiction to determine the fee owed to the Firm in this matter, based on quantum meruit. Dkt. 45. Therefore, the *sole* issue for the Court to now determine is the amount of fee the Firm is owed.

### A. The Requested Hourly Rate of $495 Is Reasonable.

The party seeking a fee award must show that the requested hourly rate is reasonable. *McAfee,* 738 F.3d at 91. In determining reasonableness, the court considers the prevailing market rate in the community where the court sits and the background and experience of the lawyer involved. *Id.; Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994); *Reed v. Department of Corrections, Va.,* No. 7:13-cv-00543, 2015 WL 2374193, at *2 (W.D. Va. May 18, 2015).

A fee applicant can meet its burden of proof by a declaration attesting to the reasonableness of the requested hourly rate and evidence of what the attorney "actually charged" his client. *E.g., Robinson v. Equifax Info. Servs*., LLC, 560 F.3d 235,245 (4th Cir. 2009); *Rum Creek Coal*, 31 F.3d at 175; *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987); *Atkins v. Virginia Dept. of Transp.*, No. I

7

:13-cv-00057, 2015 WL 858870, at *2 (W.D. Va. Feb. 27, 2015). Reasonableness can also be established by the rates approved in other cases and the court's own familiarity with the rates prevailing in the district. *E.g. Rogers v. Summit Receivables*, No. 3:17-cv-0069, 2018 WL 1161144, at *4 (W.D. Va. Mar. 5, 2018); Valdez v. Arm Wyn, LLC, No. 7:14-cv-00263, 2015 WL 3661102, at *4 (W.D. Va. June 12, 2015).

Charles M. Lollar has practiced law for more than 42 years. The Firm's Fee Statement for the 65 plus hours he expended on behalf of Defendant in this matter, at an hourly rate of $495, is well within the prevailing market rate for attorneys with Lollar's education, training, and experience. *See* **Exhibits S, T and U** to Motion**.** Moreover, rates that an attorney may properly charge for fees may be much larger where the fee is to be contingent than where it is not. *County of Campbell v. Howard, supra. See also Zen43, LLC v. Washington and Lee University,* Case No. 6:17-cv-00053, USDC, WD Va. Lynch Div. (2018), a copy of which is attached as **Exhibit V.;** *Griffin v. Areva, Inc*., No. 6:16-cv- 29, 2016 WL 7736953, at *2-3 (Dec. 15, 2016). In *Zen43,* Judge Moon approved an hourly rate of $350 an hour for a partner, Webb Moore, with ten years less experience than Lollar in a non-specialized area of practice (contract claim) which was not undertaken on a contingent fee basis. Mr. Moore's billed rate was $490; Lollar's usual billing rate, when not working on a contingent fee, is $600 an hour.

Consequently, the Court should approve Lollar's *quantum meruit* request with regards to an hourly rate of $495.

B. **The Requested Sixty-Five Hours Are Reasonable.**

In determining the reasonable number of hours, the court considers the specific tasks involved, whether those tasks would normally be billed to a paying client, and the potential duplication of services. *E.g., Hudson*, 2013 WL 4520023, at *4. The Court must also weigh

8

the hours claimed against its own knowledge, experience, and expertise of the time required to complete similar activities. *Id*.

The 65 hours of time devoted to this matter by Lollar is reasonable under the circumstances. *See* **Exhibits S, T and U** to Motion. Consequently, the *lodestar* amount of $32,225 (rounded) is reasonable and should be approved by the Court.

    **C.**    **The Court should Consider the Contingent Nature of Lollar's Representation.**

The *lodestar* amount should be increased by 25% due to (1) the contingency fee arrangement pursuant to the Contract between the Firm and Defendant, and (2) the complex and difficulty nature of pursuit of the claim given the circumstances requiring Lollar to focus on issues beyond the scope of his engagement. The Court therefore should award an upward adjustment of $8,056 in fee based upon the criteria set forth in *County of Campbell v. Howard, supra*.

## CONCLUSION

For the foregoing reasons, the Firm respectfully requests that the Court grant its motion and order Defendant to pay reasonable attorney's fees to the Firm in the amount of $40,280.50 and expenses in the amount of $280.36.

9

Respectfully submitted, this the 5th day of May, 2020.

/s/Charles M. Lollar_____
Charles M. Lollar
VSB No. 17009
chuck@lollarlaw.com
Charles M. Lollar, Jr.
VSB No. 88635
chip@lollarlaw.com
LOLLAR LAW, PLLC
109 E. Main St., Suite 501
Norfolk, VA 23510
Telephone: (757) 644-4657
Facsimile: (757) 644-4659
*Counsel for Charles M. Lollar,*
*Charles M. Lollar, Jr, and*
*Lollar Law, PLLC*

**Certificate of Service**

I hereby certify that on May 5, 2020, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including the following:

Benjamin L. Perdue
blp@eminentdomaingroup.us
Henry E. Howell, III
heh@eminentdomaingroup.us
THE EMINENT DOMAIN LITIGATION GROUP, P.L.C.
164 George Washington Highway South
Chesapeake, VA  23323
Telephone: (757) 446-9999
Facsimile: (757) 644-9008
*Counsel for Landowner*

10

Richard D. Holzheimer, Jr.
rholzheimer@mcguirewoods.com
John D. Wilburn
jwilburn@mcguirewoods.com
N. Patrick Lee
plee@mcguirewoods.com
Kang He
khe@mcguirewoods.com
MCGUIRE WOODS, LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102
Telephone: (703) 712-5000
Facsimile: (703) 712-5050

Godfrey T. Pinn, Jr.
gpinn@hclawfirm.com
Stacy E. Lee
slee@hclawfirm.com
HARRELL & CHAMBLISS, LLP
707 East Main St., Ste. 100
Richmond, Virginia 23219
Telephone: (804) 643-8401
Facsimile: (804) 648-2702
*Counsel for Atlantic Coast Pipeline, LLC.*

/s/Charles M. Lollar_____

11