# EXHIBIT "I"



**DOYLE**
LAND SERVICES

October 19, 2016

Nelson County Creekside LLC
106 Starvale Lane
Shipman, VA 22971

Re:     Landowner Tract(s): 08-121-A033
        Parcel Number(s): 46 A 51
        Nelson County, VA

Dear Nelson County Creekside LLC:

Atlantic Coast Pipeline, LLC, a company composed of subsidiaries of Dominion Resources, Duke Energy, Piedmont Natural Gas and Southern Company Gas (formerly AGL Resources), the parent company of Virginia Natural Gas, proposes to build an underground interstate pipeline starting in Harrison County, West Virginia and extending approximately five hundred and fifty (550) miles through Greensville County, Virginia and into eastern North Carolina. A spur will run East from approximately where the Atlantic Coast Pipeline (ACP) crosses the Virginia/North Carolina border to Chesapeake, Virginia.

It is our understanding that you own property in Nelson County, VA (more particularly described on the attached easement) across which we wish to install the pipeline. This letter and the following listed and attached documents serve as ACP's offer to acquire an easement across your property:

1. Easement Agreement (including a drawing / plat showing the location of the easement)
2. Offer Calculation Sheet
3. Owner Questionnaire
4. W-9 Form
5. Self-addressed, stamped envelope

Assuming all meets with your approval, please appear before a Notary Public, execute the easement in the space provided and have the easement notarized. Please then return the original fully executed and notarized easement, the completed construction questionnaire and the completed W-9 form to me in the self-addressed stamped envelope.

Within forty-five (45) days of receipt of the fully executed easement and W-9 form, we will mail or deliver to you a check in the amount ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ This offer is open for a period of thirty (30) days from the date hereof unless otherwise extended in writing by sender.

I greatly appreciate your attention to this matter and if you have any questions or if you wish to discuss in more detail please don't hesitate to call me at 208-716-5363.

Respectfully,

DOYLE LAND SERVICES, INC. in service to ATLANTIC COAST PIPELINE, LLC

Jack Scanlan
Right of Way Agent
P. O. Box 1527
Waynesboro, VA 22980

**DOYLE_NELSONCOUNTYCREEKSIDE_000001**

# EXHIBIT "J"

## Chuck Lollar

**To:**     Austin Russell
**Subject:**  RE: ACP Offer - Nelson County Creekside, LLC - 08-121-A033

**From:** Austin Russell <austinrussell85@gmail.com>
**Sent:** Wednesday, August 9, 2017 2:39 PM
**To:** Chuck Lollar <chuck@lollarlaw.com>
**Subject:** ACP Offer - Nelson County Creekside, LLC - 08-121-A033

**Mr. Lollar,**

**Please see agreement and current offer attached for Nelson County Creekside, LLS tract 08-121-A033.**

--
**Austin Russell**
**Sr. Right of Way Agent**
**Cell: 740-236-8022**
austinrussell85@gmail.com

1

### Offer Calculation Sheet
(Acreage Calculation)

| | |
|---|---|
| Date | July 21, 2017 |
| State | VA |
| County | Nelson |
| Tract No. | 08-121-A033 |
| | |
| Permanent Right Of Way Acres | 6.01 |
| Permanent Right Of Way Value Per Acre VA - Nelson - Agricultural | |
| Permanent Right Of Way Offer Percentage | 100% |
| Permanent Right Of Way Offer Amount (acres * value * percentage) | |
| | |
| Temporary Right Of Way Acres | 4.61 |
| Temporary Right Of Way Value Per Acre | |
| Temporary Right Of Way Offer Percentage | 50% |
| Temporary Right Of Way Offer Amount (acres * value * percentage) | |
| | |
| Access Road (or other element) Offer Amount | |
| | |
| Total Offer Amount | |



Timber ▮▮▮ X 10.62 Disturbed Acres = ▮▮▮
X Double Stumpage = ▮▮▮
Total = ▮▮▮

Case 3:18-cv-00007-NKM-JCH Document 56-1 05/05/20 Page 6 of 29
Case 3:18-cv-00007-NKM-JCH Document 56-1 05/05/20 Page 6 of 29
Pageid#: 769

This Agreement Prepared by
Atlantic Coast Pipeline, LLC
120 Tredegar Street
Richmond, VA 23219

Upon Recording Return to:
Doyle Land Services, Inc. in service to
Atlantic Coast Pipeline, LLC
P. O. Box 1527
Waynesboro, VA 22980

GPIN/TAX ID # 46 A 51

Consideration:

## EASEMENT AGREEMENT

Pipeline No.: AP 1

Tract(s): 08-121-A033

THIS AGREEMENT, made and effective _____, 2017, for and in consideration of the sum of Ten and no/100 Dollars ($10.00), the receipt of which is hereby acknowledged, NELSON COUNTY CREEKSIDE, LLC, a Virginia limited liability company, of 106 Starvale Ln., Shipman, VA, 22971, (hereinafter called "Grantor") hereby grants and conveys, to ATLANTIC COAST PIPELINE, LLC, a Delaware Limited Liability Company, of 120 Tredegar Street, Richmond, Virginia, 23219, its successors and assigns (hereinafter called "Grantee") permanent and temporary easements, as more fully described herein, for a right-of-way to construct, install, maintain, repair, replace, change the size of, operate and remove one natural gas pipeline, together with all appurtenant appliances and equipment, for the transportation of natural gas and its naturally-occurring constituents upon and over certain lands of Grantor situated in Lovingston District, Nelson County, Virginia, being further described as follows:

That certain tract of land composed of 104.41 acres, more or less, located in Lovingston District, Nelson County, Virginia and being all that certain 92 acres more particularly described in General Warranty Deed recorded in Book 98, Page 361; Less and Except a certain tract containing 0.27 acres, more or less, as described in Book 296, Page 715, and being all that certain 12.180 acres more particularly described as Parcel 3B on a plat attached and made part of General Warranty Deed recorded in Book 266, Page 278 of the public records of said County.

The general location, width, and other bounds of the Permanent Easement and the Temporary Work Easement conveyed herein shall be as depicted on the plat attached to this Easement Agreement as Exhibit "A", and made a part hereof. The Temporary Work Easement will be used during the initial construction and for restoration, clean-up, re-vegetation, and any repair or remediation required by initial pipeline installation. Prior to the start of initial construction on the Permanent Easement, Grantor will receive notice of the commencement of construction. The Temporary Work Easement will terminate five (5) years after the commencement of construction on the Permanent Easement.

Grantee shall have the right to modify the location of the pipeline within the Permanent Easement during initial construction.

Grantee shall have the right to use the Permanent Easement (1) to construct, install, maintain, repair, replace, change the size of, operate and remove anodes and other devices for the cathodic protection of the pipeline, and (2) to construct, install, maintain, repair, replace, change the size of, operate and remove any valves, gates, drips and other appurtenances necessary for the operation of the pipeline.

Grantee shall have the right of ingress and egress to and along the Temporary Work Easement and the Permanent Easement, and to use the Temporary Work Easement and Permanent Easement to transport pipe, vehicles, machinery, persons, equipment and other materials to and from other lands. Further, Grantee shall have the right to use any existing road(s) on the property to access the Temporary Work Easement and the Permanent Easement or to exercise any of the rights granted herein. Grantee shall repair any damage caused by its use of those roads.

Grantor hereby grants to Grantee all other rights necessary or convenient for the full use and enjoyment of the rights herein granted, including but not limited to the right (1) to clear the Permanent Easement of any and all obstructions, and (2) to clear, cut, trim, and remove all vegetation, trees, brush, and overhead branches from the Temporary Work Easement and Permanent Easement; provided that removal of trees and vegetation shall be by mechanical means only.

Grantee agrees to pay for actual damages to crops, trees and fences arising from the exercise of rights granted herein during construction and operation of pipeline, consistent with its obligations under applicable laws.

Grantor shall be entitled to the use and enjoyment of the lands covered by the Permanent Easement, subject to the rights herein granted to Grantee. Grantor shall not construct nor cause to be constructed any permanent or temporary structures or obstructions of any kind within the Permanent Easement, including but not limited to buildings, garages, sheds, pools, mobile homes, trees, poles or towers. No construction equipment or vehicles of any kind shall be stored, nor heavy machinery or equipment operated, within the Permanent Easement; provided, that nothing herein shall prohibit the use of typical farming equipment and farming activities. No earth shall be removed from or filled upon the Permanent Easement without the express written consent of Grantee. Grantor shall be responsible for complying with any state or local "one call" requirements in the event of construction on or near the Permanent Easement.

Grantee agrees to protect, defend, indemnify and hold harmless the Grantor from any and all damages, claims for damages, demands, suits, recoveries, judgments or executions which may arise or be made by reason of injuries or damages to persons or property resulting from Grantee's exercise of the rights granted herein, consistent with Grantee's obligations under applicable laws or regulations. This indemnification shall not extend to any claims which arise from the sole negligence or willful or wanton misconduct by Grantor or third parties.

All equipment, fixtures, and facilities placed on the Permanent Easement by Grantee shall be and remain the property of Grantee. Grantee shall have the right to terminate this Agreement or any portion thereof by filing a release in the same public records in which it is recorded. In the event that Grantee terminates this Agreement, in whole or part, Grantee shall have a reasonable time afterward to remove all of its equipment, fixtures, and facilities unless express permission has been received from the then-owner to abandon such items in-place. Following removal of its equipment and fixtures, Grantee shall restore the lands, as nearly as practicable, to the condition existing prior to termination.

This agreement may be executed in counterparts and shall be binding upon each party executing any counterpart and upon their respective heirs, personal representatives, successors and assigns.

See the ADDENDUM attached hereto as Exhibit "B" for additional provisions to this Easement Agreement.

By acceptance of this easement the Grantee agrees to perform and comply with all conditions and covenants contained herein.

WITNESS the signature(s) of Grantor this date.

WITNESS:                                              GRANTOR:

_____                          NELSON COUNTY CREEKSIDE, LLC, a Virginia limited
                                                     liability company
Print Name                                           By: _____

                                                     Name: _____

                                                     Title: _____

STATE/COMMONWEALTH OF _____
COUNTY OF _____ to-wit:

        The foregoing instrument was acknowledged before me, the undersigned Notary Public, this _____ day
of _____,20___ by _____ as _____, an authorized representative
of NELSON COUNTY CREEKSIDE, LLC, a Virginia limited liability company, who personally appeared before
me in the aforesaid jurisdiction and did acknowledge that he/she signed, sealed and delivered the foregoing
instrument as his/her voluntary act and deed of said company for the purposes herein contained. He/She is ☐
personally known to me or ☐ produced _____ as identification.

                                                     _____

                                                     Notary Public

My commission expires: _____                      (AFFIX SEAL)

Registration #: _____

Page 3 of 6

EXHIBIT A



**BEARINGS & DISTANCE ALONG PIPELINE:**
8839+36 TO 8841+38 S 13°16'03" E – 202'
8841+38 TO 8851+03 S 11°48'32" E – 965'
8851+03 TO 8854+07 S 49°49'27" E – 304'
8854+80 TO 8855+29 S 60°02'45" E – 49'
8855+29 TO 8856+77 S 69°43'27" E – 148'
8856+77 TO 8861+69 N 86°40'21" E – 492'
8861+69 TO 8868+96 N 75°48'35" E – 727'
8868+96 TO 8874+97 N 65°46'23" E – 601'

SCALE: 1" = 2000'

8839+36 PL

STAGEBRIDGE RD

8840+62
50' X 150' PROPOSED
EXTRA WORKSPACE (TYP.)

8842+11

PI 8841+38

8843+13

8844+63

75' PROPOSED PERMANENT
RIGHT OF WAY

125' PROPOSED OVERALL
RIGHT OF WAY

PI 8851+03

PROPOSED 42"
AP-1 PIPELINE

8874+97 PL

PI 8868+96

PI 8855+29

PI 8861+69

PI 8856+77

25' AGRICULTURAL
RIGHT OF WAY

8871+65

50' PROPOSED TEMPORARY
RIGHT OF WAY

**STATION EQUATION**
STATION = 8854+07.04 BK.
STATION = 8854+80.47 AHD.

LL-08-121-A033
N/F
NELSON COUNTY CREEKSIDE LLC
PARCEL I.D. # 46  A  51
3488 LF

SCALE: 1" = 400'

400'          0          400'

**LEGEND**

———  ——  PROPERTY LINE
— — — — —  PROPOSED PERMANENT EASEMENT
— — —  PROPOSED GAS PIPELINE
— · · —  PROPOSED ACCESS ROAD

▨  PROPOSED TEMPORARY R.O.W.

▨  EXTRA WORK SPACE

▨  TOPSOIL SEGREGATION AREA

▨  AREA OF NO DISTURBANCE

PERMANENT RIGHT OF WAY AREA = 261,766 SQ FT / 6.01 AC
TEMPORARY RIGHT OF WAY AREA = 178,159 SQ FT / 4.09 AC
EXTRA WORK SPACE AREA = 15,000 SQ FT / 0.34 AC
AGRICULTURAL LANDS AREA = 8,000 SQ FT / 0.18 AC

**NOTES:**
1. COORDINATE SYSTEM USED FOR MAPPING AND TOPOGRAPHY – UTM WITH NAD83 DATUM, ZONE 17, US SURVEY FOOT, CENTRAL MERIDAN 81° W
2. ALL STATIONING SHOWN IS SLOPE STATIONING.
3. THIS EXHIBIT DOES NOT REPRESENT A BOUNDARY SURVEY.
4. PROPERTY BOUNDARIES SHOWN ARE FROM GIS AND TAX RECORDS
5. IN ACCORDANCE WITH THE EASEMENT AGREEMENT, GRANTEE SHALL HAVE THE RIGHT TO MODIFY THE LOCATION OF THE PIPELINE WITHIN THE PERMANENT EASEMENT DURING INITIAL CONSTRUCTION.

| | RIGHT OF WAY EXHIBIT | DWN. GAH | CHKD. DLH | APPD. NET | DATE 4/17/17 |
|---|---|---|---|---|---|
| **gai consultants** SOUTHPOINTE OFFICE 6000 TOWN CENTER BLVD. CANONSBURG, PA 15317 724-873-3040 | NELSON COUNTY CREEKSIDE LLC NELSON COUNTY, VIRGINIA | SCALE: | AS SHOWN | | TASK NO. 01 |
| | **ATLANTIC COAST PIPELINE, LLC** C/O DOMINION TRANSMISSION, INC. 445 W. MAIN STREET CLARKSBURG, WEST VIRGINIA 26301 | PROJECT NO./DASH NO. 140468 | | | |
| | | DRAWING NO. LL-08-121-A033 | | | REV |

© 2017 GAI Consultants, Inc.

Exhibit "B"

This ADDENDUM to that certain Easement Agreement dated _____ by and between NELSON COUNTY CREEKSIDE, LLC, a Virginia limited liability company, of 106 Starvale Ln., Shipman, VA, 22971, (hereinafter called the ("Grantor") and ATLANTIC COAST PIPELINE, LLC, its successors and assigns (hereinafter called "Grantee").

With Property being located in Lovingston District, Nelson County, Virginia.

All provisions herein are subordinate and subject to Federal, State and Local Regulations. Should there be a conflict between the special provisions listed herein below and the main body of that certain Easement Agreement referenced above, in all cases the special provisions listed below (subject to state, local and federal regulations) shall prevail.

Chips and Timber Stack

Regarding trees, and related debris, removed from the Permanent Easement and Temporary Work Easement under this Easement Agreement ("Timbering Material"), Grantor hereby understands, approves and agrees that Grantee may, in its sole discretion, (i) chip and disperse Timbering Material both upon and off of the Permanent Easement and Temporary Work Easement; (ii) stack Timbering Material removed from the Permanent Easement or Temporary Work Easement both upon and off of the Permanent Easement and Temporary Work Easement; and (iii) remove Timbering Material from Grantor's property altogether. Grantee agrees to coordinate with Grantor as to a location of any stacking of Timbering Material immediately adjacent to the Permanent Easement and will use commercially reasonable efforts to locate log stacks for landowner access. The final determination as to the location of any stacks of Timbering Material will ultimately be in the sole discretion of Grantee. Grantor further understands, agrees and acknowledges that Grantor will be solely responsible for any damages to the Permanent Easement or Temporary Work Easement caused by Grantor's removal of any Timbering Material following restoration of the Permanent Easement and Temporary Work Easement.

Easement Area:

The location, width, and other bounds of the permanent easement (the "Permanent Easement") and the temporary work easement (the "Temporary Work Easement") (the Permanent Easement and the Temporary Work Easement are collectively referred to as the "Easement Area") conveyed in the Easement Agreement are revised to be located as depicted on the plat attached hereto as Exhibit "A", which is incorporated herein by this reference. After initial construction has been completed, the Permanent Easement shall not exceed seventy-five feet (75') in width. Effective as of the granting of the Easement Agreement, the final location of the Permanent Easement may be further adjusted, and shall be fixed and determined by the installation of the pipeline on Grantor's property within the area of the Permanent Easement shown on Exhibit "A." The final Permanent Easement area shall be thirty-seven and one-half feet (37.5') on each side of the center of the installed pipeline. The final Temporary Work Easement shall be adjacent to the Permanent Easement and shall not exceed fifty feet (50') in width from the Permanent Easement. Within a reasonable time after completion of construction on Grantor's property, Grantee will prepare a survey of the final Easement Area and develop a more precise description of the location of the Easement Area (the "Map") and record the Map in the land records of the county where Grantor's property is situated. Grantee agrees to compensate Grantor if the area of the adjusted Permanent Easement or Temporary Work Easement area exceeds the area shown on Exhibit "A" and for which Grantor has been compensated. Any additional compensation will be calculated using the same rates and methods used to calculate the compensation paid to Grantor upon the signing of this agreement and shall only include the amount by which the additional compensation, if any, exceeds the initial compensation. Grantor will NOT be required to reimburse Grantee for any amount paid as consideration for the Easement Agreement, as modified hereby, including for any acreage for which Grantor received compensation but was not ultimately included in the Permanent Easement or Temporary Work Easement shown on the Map.

Wetland Provision

If Local, State or Federally-regulated waters or wetlands (collectively and individually "Regulated Waters or Wetlands") within the Permanent Easement or Temporary Easement are disturbed by Grantee, Grantor acknowledges that Grantee may be required by law to restore and/or re-vegetate any such disturbed Regulated Waters or Wetlands. Additionally, Grantor agrees to: (a) cooperate with Grantee to ensure any such restored or re-vegetated Regulated Waters or Wetlands are maintained as required by applicable laws; (b) notify Grantee in advance of any proposed plans to disturb any Regulated Waters or Wetlands within the Permanent Easement or Temporary Easement; and (c) notify Grantee of Grantor's efforts to obtain any required permits, permit modifications and/or approvals, prior to conducting any proposed disturbance of Regulated Waters or Wetlands within the Permanent Easement or Temporary Easement. Grantor agrees that any permitting and/or disturbance of Regulated Waters or Wetlands by Grantor within the Permanent Easement or Temporary Easement, including any required mitigation and/or penalties, will be at Grantor's own risk and cost.

SIGNED FOR IDENTIFICATION:

NELSON COUNTY CREEKSIDE, LLC, a Virginia limited liability company

By: _____

Name: _____

Title: _____

# EXHIBIT "K"

## Chuck Lollar

**To:** Daniel McNeil
**Subject:** RE: Atlantic Coast Pipeline - Nelson County Creekside - New Offer

**From:** Daniel McNeil <dmcNeil@doyleland.com>
**Sent:** Friday, March 23, 2018 11:35 AM
**To:** Chuck Lollar <chuck@lollarlaw.com>
**Subject:** Atlantic Coast Pipeline - Nelson County Creekside - New Offer

Chuck,

Please see the attached Easement and offer.

**Easement:**
**Timber:**

Semper Fi,

**Daniel McNeil**
**Lead Right of Way Agent**
**DOYLE LAND SERVICES, INC.**
**Waynesboro, VA**
**Cell: (607) 972-5639**
dmcneil@doyleland.com

1

**Offer Calculation Sheet**
(Acreage Calculation)

| Date | March 22, 2018 |
|---|---|
| State | VA |
| County | Nelson |
| Tract No. | 08-121-A033 |
| | |
| Permanent Right Of Way Acres | 4.09     *4.09* |
| Permanent Right Of Way Value Per Acre VA - Nelson - Agricultural | ████████████ |
| Permanent Right Of Way Offer Percentage | 100%     *100%* |
| Permanent Right Of Way Offer Amount (acres * value * percentage) | ██████████████ |
| | |
| Temporary Right Of Way Acres | 7.21     *7.21* |
| Temporary Right Of Way Value Per Acre | ██████████ |
| Temporary Right Of Way Offer Percentage | 50%     *50%* |
| Temporary Right Of Way Offer Amount (acres * value * percentage) | █████████████ |
| | |
| Access Road (or other element) Offer Amount | ███ |
| | |
| Total Offer Amount | █████████████ |

*11.27 Acres of — ████████*
*Timber*

████████████

This Agreement Prepared by
Atlantic Coast Pipeline, LLC
120 Tredegar Street
Richmond, VA 23219

Upon Recording Return to:
Doyle Land Services, Inc. in service to
Atlantic Coast Pipeline, LLC
P. O. Box 1527
Waynesboro, VA 22980

GPIN/TAX ID # 46 A 51

Consideration: $_____

EASEMENT AGREEMENT

Pipeline No.: AP 1

Tract(s): 08-121-A033

THIS AGREEMENT, made and effective _____, 2018, for and in consideration of the sum of Ten and no/100 Dollars ($10.00), the receipt of which is hereby acknowledged, NELSON COUNTY CREEKSIDE, LLC, a Virginia limited liability company, of 106 Starvale Lane, Shipman, VA 22971, (hereinafter called "Grantor") hereby grants and conveys, to ATLANTIC COAST PIPELINE, LLC, a Delaware Limited Liability Company, of 120 Tredegar Street, Richmond, Virginia, 23219, its successors and assigns (hereinafter called "Grantee") permanent and temporary easements, as more fully described herein, for a right-of-way to construct, install, maintain, repair, replace, change the size of, operate and remove one natural gas pipeline, together with all appurtenant appliances and equipment, for the transportation of natural gas and its naturally-occurring constituents upon and over certain lands of Grantor situated in Lovingston District, Nelson County, Virginia, being further described as follows:

That certain tract of land composed of 104.41 acres, more or less, located in Lovingston District, Nelson County, Virginia and being all that certain 92 acres more particularly described in General Warranty Deed recorded in Book 98, Page 361; Less and Except a certain tract containing 0.27 acres, more or less, as described in Book 296, Page 715, and being all that certain 12.180 acres more particularly described as Parcel 3B on a plat attached and made part of General Warranty Deed recorded in Book 266, Page 278 of the public records of said County.

The general location, width, and other bounds of the Permanent Easement and the Temporary Work Easement conveyed herein shall be as depicted on the plat attached to this Easement Agreement as Exhibit "A", and made a part hereof. The Temporary Work Easement will be used during the initial construction and for restoration, clean-up, re-vegetation, and any repair or remediation required by initial pipeline installation. Prior to the start of initial construction on the Permanent Easement, Grantor will receive notice of the commencement of construction. The Temporary Work Easement will terminate five (5) years after the commencement of construction on the Permanent Easement.

Grantee shall have the right to modify the location of the pipeline within the Permanent Easement during initial construction.

Grantee shall have the right to use the Permanent Easement (1) to construct, install, maintain, repair, replace, change the size of, operate and remove anodes and other devices for the cathodic protection of the pipeline, and (2) to construct, install, maintain, repair, replace, change the size of, operate and remove any valves, gates, drips and other appurtenances necessary for the operation of the pipeline.

Grantee shall have the right of ingress and egress to and along the Temporary Work Easement and the Permanent Easement, and to use the Temporary Work Easement and Permanent Easement to transport pipe, vehicles, machinery, persons, equipment and other materials to and from other lands. Further, Grantee shall have the right to use any existing road(s) on the property to access the Temporary Work Easement and the Permanent Easement or to exercise any of the rights granted herein. Grantee shall repair any damage caused by its use of those roads.

Grantor hereby grants to Grantee all other rights necessary or convenient for the full use and enjoyment of the rights herein granted, including but not limited to the right (1) to clear the Permanent Easement of any and all obstructions, and (2) to clear, cut, trim, and remove all vegetation, trees, brush, and overhead branches from the Temporary Work Easement and Permanent Easement; provided that removal of trees and vegetation shall be by mechanical means only.

Grantee agrees to pay for actual damages to crops, trees and fences arising from the exercise of rights granted herein during construction and operation of pipeline, consistent with its obligations under applicable laws.

Grantor shall be entitled to the use and enjoyment of the lands covered by the Permanent Easement, subject to the rights herein granted to Grantee. Grantor shall not construct nor cause to be constructed any permanent or temporary structures or obstructions of any kind within the Permanent Easement, including but not limited to buildings, garages, sheds, pools, mobile homes, trees, poles or towers. No construction equipment or vehicles of any kind shall be stored, nor heavy machinery or equipment operated, within the Permanent Easement; provided, that nothing herein shall prohibit the use of typical farming equipment and farming activities. No earth shall be removed from or filled upon the Permanent Easement without the express written consent of Grantee. Grantor shall be responsible for complying with any state or local "one call" requirements in the event of construction on or near the Permanent Easement.

Grantee agrees to protect, defend, indemnify and hold harmless the Grantor from any and all damages, claims for damages, demands, suits, recoveries, judgments or executions which may arise or be made by reason of injuries or damages to persons or property resulting from Grantee's exercise of the rights granted herein, consistent with Grantee's obligations under applicable laws or regulations. This indemnification shall not extend to any claims which arise from the sole negligence or willful or wanton misconduct by Grantor or third parties.

All equipment, fixtures, and facilities placed on the Permanent Easement by Grantee shall be and remain the property of Grantee. Grantee shall have the right to terminate this Agreement or any portion thereof by filing a release in the same public records in which it is recorded. In the event that Grantee terminates this Agreement, in whole or part, Grantee shall have a reasonable time afterward to remove all of its equipment, fixtures, and facilities unless express permission has been received from the then-owner to abandon such items in-place. Following removal of its equipment and fixtures, Grantee shall restore the lands, as nearly as practicable, to the condition existing prior to termination.

This agreement may be executed in counterparts and shall be binding upon each party executing any counterpart and upon their respective heirs, personal representatives, successors and assigns.

Page 2 of 6

See the ADDENDUM attached hereto as Exhibit "B" for additional provisions to this Easement Agreement.

By acceptance of this easement the Grantee agrees to perform and comply with all conditions and covenants contained herein.

WITNESS the signature(s) of Grantor this date.

WITNESS:                                      GRANTOR:

_____              NELSON COUNTY CREEKSIDE, LLC, a Virginia limited
                                             liability company
Print Name_____            By: _____

                                             Name: _____

                                             Title: _____


STATE/COMMONWEALTH OF _____

COUNTY OF _____ to-wit:

The foregoing instrument was acknowledged before me, the undersigned Notary Public, this _____ day of _____,20___ by_____ as _____, an authorized representative of NELSON COUNTY CREEKSIDE, LLC, a Virginia limited liability company, who personally appeared before me in the aforesaid jurisdiction and did acknowledge that he/she signed, sealed and delivered the foregoing instrument as his/her voluntary act and deed of said company for the purposes herein contained.  He/She is ☐ personally known to me or ☐ produced _____ as identification.


                                             _____

                                             Notary Public

My commission expires: _____             (AFFIX SEAL)

Registration #: _____


Page 3 of 6

## EXHIBIT A



BEARINGS & DISTANCE ALONG PIPELINE:
8839+36 TO 8841+31 S 13°11'53" E – 195'
8841+31 TO 8843+09 S 23°06'18" W – 178'
8843+09 TO 8844+27 S 10°18'39" W – 118'
8844+27 TO 8851+09 S 19°23'19" E – 682'
8851+09 TO 8854+94 S 49°46'17" E – 385'
8854+94 TO 8858+74 S 75°41'27" E – 380'
8858+74 TO 8863+24 N 81°17'10" E – 450'
8863+24 TO 8870+62 N 74°06'59" E – 738'
8870+62 TO 8875+20 N 61°46'31" E – 458'

SCALE: 1" = 2000'

8839+36 PL

STAGEBRIDGE RD

8840+86
50' X 150' PROPOSED
EXTRA WORKSPACE (TYP.)

PI  8841+31
8841+77
PI  8843+09

PI  8844+27

15' PROPOSED TEMPORARY
RIGHT OF WAY

PROPOSED 42"
AP-1 PIPELINE

8875+20 PL

8872+73
8871+23

PI  8851+09
50' PROPOSED PERMANENT
RIGHT OF WAY
125' PROPOSED OVERALL
RIGHT OF WAY

PI  8854+94

PI  8858+74

60' PROPOSED TEMPORARY
RIGHT OF WAY

8869+22
8870+62
8871+78

8871+98
8873+49

25' AGRICULTURAL
RIGHT OF WAY

PI  8863+24

R.A. Raf
3/22/2018

LL-08-121-A033
N/F
NELSON COUNTY CREEKSIDE LLC
PARCEL I.D. # 46  A  51
3584 LF

SCALE: 1" = 400'

400'     0     400'

PERMANENT RIGHT OF WAY AREA = 177,958 SQ FT / 4.09 AC
TEMPORARY RIGHT OF WAY AREA = 269,109 SQ FT / 6.18 AC
EXTRA WORK SPACE AREA = 36,680 SQ FT / 0.84 AC
AGRICULTURAL LANDS AREA = 8,063 SQ FT / 0.19 AC

LEGEND

— ·· — ·· —  PROPERTY LINE
— — — —  PROPOSED PERMANENT EASEMENT
————  PROPOSED GAS PIPELINE
— · — · —  PROPOSED ACCESS ROAD

////  PROPOSED TEMPORARY R.O.W.

XXXX  EXTRA WORK SPACE

⊐⊏⊐⊏  TOPSOIL SEGREGATION AREA

XXXX  AREA OF NO DISTURBANCE

NOTES:
1.  COORDINATE SYSTEM USED FOR MAPPING AND TOPOGRAPHY — UTM WITH
    NAD83 DATUM,  ZONE 17, US SURVEY FOOT, CENTRAL MERIDAN 81° W
2.  ALL STATIONING SHOWN IS SLOPE STATIONING.
3.  THIS EXHIBIT DOES NOT REPRESENT A BOUNDARY SURVEY.
4.  PROPERTY BOUNDARIES SHOWN ARE FROM GIS AND TAX RECORDS
5.  IN ACCORDANCE WITH THE EASEMENT AGREEMENT, GRANTEE SHALL HAVE
    THE RIGHT TO MODIFY THE LOCATION OF THE PIPELINE WITHIN THE
    PERMANENT EASEMENT DURING INITIAL CONSTRUCTION.

| | RIGHT OF WAY EXHIBIT | DWN. GAH | CHKD. DLH | APPD. NET | DATE 12/15/17 |
| gai consultants | NELSON COUNTY CREEKSIDE LLC NELSON COUNTY, VIRGINIA | SCALE: | AS SHOWN | | TASK NO. 01 |
| SOUTHPOINTE OFFICE 6000 TOWN CENTER BLVD. CANONSBURG, PA 15317 724-873-3546 | ATLANTIC COAST PIPELINE, LLC C/O DOMINION TRANSMISSION, INC. 445 W. MAIN STREET CLARKSBURG, WEST VIRGINIA 26301 | PROJECT NO./DASH NO. 140468 | | | |
| | | DRAWING NO. | | LL-08-121-A033/2 | REV |

© 2017 GAI Consultants, Inc.

Exhibit "B"

This ADDENDUM to that certain Easement Agreement dated _____ by and between, NELSON COUNTY CREEKSIDE, LLC, a Virginia limited liability company, of 106 Starvale Lane, Shipman, VA 22971, (hereinafter called the ("Grantor") and ATLANTIC COAST PIPELINE, LLC, its successors and assigns (hereinafter called "Grantee").

With Property being located in Lovingston District, Nelson County, Virginia.

All provisions herein are subordinate and subject to Federal, State and Local Regulations. Should there be a conflict between the special provisions listed herein below and the main body of that certain Easement Agreement referenced above, in all cases the special provisions listed below (subject to state, local and federal regulations) shall prevail.

Timber Stack and Chips:

Regarding trees, slash and related debris, removed from the Permanent Easement and Temporary Work Easement under this agreement ("Timbering Material"), Grantor hereby understands, approves and agrees that Grantee may, in its sole discretion and in accordance with any applicable governmental approvals, permits, laws or regulations: (i) chip and disperse Timbering Material both upon and off of the Permanent Easement and Temporary Work Easement; (ii) stack Timbering Material removed from the Permanent Easement or Temporary Work Easement both upon and off of the Permanent Easement and Temporary Work Easement; (iii) remove Timbering Material from Grantor's property altogether; and (iv) burn slash and debris on the Permanent Easement and Temporary Work Easement in accordance with permit regulations and agency consultations. Grantee agrees to coordinate with Grantor as to a location of any stacking of Timbering Material immediately adjacent to the Permanent Easement and will use commercially reasonable efforts to locate log stacks for landowner access. The final determination as to the location of any stacks of Timbering Material will ultimately be in the sole discretion of Grantee. Grantor further understands, agrees and acknowledges that Grantor will be solely responsible for any damages to the Permanent Easement or Temporary Work Easement caused by Grantor's removal of any Timbering Material following restoration of the Permanent Easement and Temporary Work Easement.

Easement Area:

The location, width, and other bounds of the permanent easement (the "Permanent Easement") and the temporary work easement (the "Temporary Work Easement") (the Permanent Easement and the Temporary Work Easement are collectively referred to as the "Easement Area") conveyed in the Easement Agreement to be located as depicted on the plat attached hereto as Exhibit "A", which is incorporated herein by this reference. After initial construction has been completed, the Permanent Easement shall not exceed fifty feet (50') in width. Effective as of the granting of the Easement Agreement, the final location of the Permanent Easement may be further adjusted, and shall be fixed and determined by the installation of the pipeline on Grantor's property within the area of the Permanent Easement shown on Exhibit "A." The final Permanent Easement area shall be twenty-five feet (25') on each side of the center of the installed pipeline. The final Temporary Work Easement shall be adjacent to the Permanent Easement and shall not exceed one hundred and twenty-five feet (125') in width from the Permanent Easement. Within a reasonable time after completion of construction on Grantor's property, Grantee will prepare a survey of the final Easement Area and develop a more precise description of the location of the Easement Area (the "Map") and record the Map in the land records of the county where Grantor's property is situated. Grantee agrees to compensate Grantor if the area of the adjusted Permanent Easement or Temporary Work Easement area exceeds the area shown on Exhibit "A" and for which Grantor has been compensated. Any additional compensation will be calculated using the same rates and methods used to calculate the compensation paid to Grantor upon the signing of this agreement and shall only include the amount by which the additional compensation, if any, exceeds the initial compensation. Grantor will NOT be required to reimburse Grantee for any amount paid as consideration for the Easement Agreement including for any acreage for which Grantor

Page 5 of 6

received compensation but was not ultimately included in the Permanent Easement or Temporary Work Easement shown on the Map.

Wetland Provision:

If Local, State or Federally-regulated waters or wetlands (collectively and individually "Regulated Waters or Wetlands") within the Permanent Easement or Temporary Easement are disturbed by Grantee, Grantor acknowledges that Grantee may be required by law to restore and/or re-vegetate any such disturbed Regulated Waters or Wetlands. Additionally, Grantor agrees to: (a) cooperate with Grantee to ensure any such restored or re-vegetated Regulated Waters or Wetlands are maintained as required by applicable laws; (b) notify Grantee in advance of any proposed plans to disturb any Regulated Waters or Wetlands within the Permanent Easement or Temporary Easement; and (c) notify Grantee of Grantor's efforts to obtain any required permits, permit modifications and/or approvals, prior to conducting any proposed disturbance of Regulated Waters or Wetlands within the Permanent Easement or Temporary Easement. Grantor agrees that any permitting and/or disturbance of Regulated Waters or Wetlands by Grantor within the Permanent Easement or Temporary Easement, including any required mitigation and/or penalties, will be at Grantor's own risk and cost.

Dewatering Provision

To accommodate pipeline construction and minimize potential erosion, Grantor agree(s), understand(s), acknowledge(s) and approve(s) for the Atlantic Coast Pipeline, LLC, its agents, employees and contractors ("Atlantic") to, in accordance with all applicable permits, release rain, storm and/or other surface waters collected within the trenches and/or construction-related and naturally occurring low areas across which the rights-of-way, work spaces and/or access roads of Atlantic are situated, onto the lands of the undersigned beyond/near the right-of-ways, work spaces and/or access roads to flow/disburse with the natural shape of the land away from said rights-of-way. Atlantic will generally discharge the water through a filter bag or, if volumes suggest, a straw bale filter temporarily placed upon the lands of the undersigned near the rights-of-way mentioned above.

SIGNED FOR IDENTIFICATION:

NELSON COUNTY CREEKSIDE, LLC, a Virginia limited liability company

By: _____

Name: _____

Title: _____

# EXHIBIT "L"

## Chuck Lollar

| | |
|---|---|
| **To:** | Hardy Barrett; Chip Lollar; Staff at Lollar Law |
| **Cc:** | Daniel McNeil |
| **Subject:** | RE: ACP Tract# 08-121-A033 Nelson Co. Creekside LLC updated Exhibit map and Increase in Offer |

**From:** Hardy Barrett <hardy.barrett@gmail.com>
**Sent:** Thursday, June 7, 2018 2:55 PM
**To:** Chuck Lollar <chuck@lollarlaw.com>; Chip Lollar <chip@lollarlaw.com>; Staff at Lollar Law <staff@lollarlaw.com>
**Cc:** Daniel McNeil <dmcNeil@doyleland.com>
**Subject:** ACP Tract# 08-121-A033 Nelson Co. Creekside LLC updated Exhibit map and Increase in Offer

**Good afternoon Mr. Lollar, I have been approved to increase the payment offer for Nelson Co. Creekside LLC. I have also attached the updated Exhibit map that shows the reduction in Permanent Right- of- Way down to 50 feet in width. I hope this increase in payment and reduction in Permanent Right- of- Way width will motivate Landowners to finalize the Easement Agreement. Thank you for your time and I will look forward to your response. SEE OFFER BELOW:**

**PIPELINE EASEMENT**
**TIMBER VALUE**
**TOTAL CURRENT OFFER**

**Hardy Barrett**
**Senior Right-of-Way Agent**
**304-680-2869**
hardy.barrett@gmail.com

1

Case 3:18-cv-00071-NKM-JCH Document 56-1 Filed 05/11/20 Page 23 of 29
Pageid#: 786

**BEARINGS & DISTANCE ALONG PIPELINE**

| | | |
|---|---|---|
| L1 | S15° 11' 53.37"E | 171' |
| L2 | S23° 06' 17.53"W | 178' |
| L3 | S10° 18' 38.70"W | 118' |
| L4 | S19° 23' 19.18"E | 682' |
| L5 | S49° 46' 16.84"E | 396' |
| L6 | S75° 41' 26.91"E | 390' |
| L7 | N81° 17' 10.28"E | 450' |
| L8 | N74° 06' 58.57"E | 738' |
| L9 | N61° 46' 30.62"E | 457' |

N/F
CHRISTOPHER
NICHOLAS WOOD

PL
LAT = N37°49'01"
LON = W78°48'31"
= 198'

SCALE IN FEET
0      400'      800'

08-121-A033
N/F
NELSON COUNTY CREEKSIDE LLC
TAX MAP #46 A 51
3,560 LF

N/F
KENNETH W. JR. &
ANNE A NORWOOD

150' x 50'

15' TEMPORARY EASEMENT

50' PERMANENT EASEMENT

25'

25'

42" AP-1 GAS PIPELINE

90' TEMPORARY EASEMENT

125' PROPOSED OVERALL EASEMENT

PL
LAT = N37°49'31"
LON = W78°49'01"

N/F
RUBY BIBB SHELTON

08-121-A033A

PERMANENT EASEMENT = 177,965 SQ FT / 4.09 AC
TEMPORARY EASEMENT = 283,903 SQ FT / 6.52 AC

**LEGEND**

— — — — SUBJECT PROPERTY LINE
— ·· — ·· — ADJOINER PROPERTY LINE
— — — — PERMANENT EASEMENT
————— GAS PIPELINE
— — — — TEMPORARY EASEMENT
○ PROPERTY CORNER

**NOTES:**

1. COORDINATE SYSTEM USED FOR MAPPING AND TOPOGRAPHY – UTM WITH NAD83 DATUM, ZONE 17, US SURVEY FOOT, CENTRAL MERIDIAN 81° W
2. THIS EXHIBIT DOES NOT REPRESENT A BOUNDARY SURVEY.
3. PROPERTY BOUNDARIES SHOWN ARE FROM GIS, TAX RECORDS, DEEDS AND ANY OBSERVED FIELD EVIDENCE PROVIDED BY OTHERS.
4. ALL FIELD DATA COLLECTED UTILIZING SUBMETER ACCURATE GPS.
5. ALL SHOWN TIES TO PROPERTY CORNERS HAVE BEEN SCALED.

---

| | | |
|---|---|---|
| SCALE: | AS SHOWN | |
| DATE: | 5/26/18 | |
| DRAWN: | PMC | |
| CHKD: | DLH | |
| APPD: | NET | |

NELSON COUNTY CREEKSIDE LLC
EASEMENTS ACROSS PROPERTY OF
ACP 42" GAS PIPELINE AP-1

ATLANTIC COAST PIPELINE, LLC
925 WHITE OAKS BOULEVARD
BRIDGEPORT WV, 26300

NELSON COUNTY, VIRGINIA

gai consultants

KEYSTONE
CONSULTANTS, INC.

PROJECT NO./
DWG NO.
C140468

TASK NO.
01

DRAWING NO.
LL-08-121-A033

REV
A1C

© 2018 GAI Consultants, Inc.

# EXHIBIT "M"

## Chuck Lollar

**To:**        Chuck Lollar
**Subject:**   RE: ACP Offer – Nelson County Creekside, LLC – 08-121-A033

**From:** Chuck Lollar
**Sent:** Thursday, August 10, 2017 9:30 PM
**To:** Austin Russell <austinrussell85@gmail.com>
**Cc:** Matthew C. Sly <mcsly@doyleland.com>; jmscanlan1234@gmail.com; Gregory S Park (Energy - 2) <gregory.s.park@dom.com>
**Subject:** FW: ACP Offer - Nelson County Creekside, LLC - 08-121-A033

Dear Mr. Russell,

The attached plat is dated April 17, 2017, and the attached Offer Calculation Sheet is dated July 21, 2017. We have no record of previously receiving either one, notwithstanding our continued communications with Doyle Land Services through Jack Scanlan, Matthew Sly and you requesting confirmation that ACP's route through this client's property was moved in accordance with a meeting **June 29, 2016** with Greg Park of Dominion Transmission, requesting that the route be moved due to its very close proximity to the client's home, running directly through his children's swing set. We learned for the first time yesterday, with this plat, that the route has been moved to roughly the same spot that ACP surveyed about 6 months ago, which is **not** what the client had discussed with Mr. Park and not acceptable as it severs the property almost in half.

Please advise by reply email when either of these have previously been sent to our firm or to the client directly.

These matters need to be clarified before we can respond to this offer.
Sincerely,
**Charles M. Lollar**

**From:** Austin Russell [mailto:austinrussell85@gmail.com]
**Sent:** Wednesday, August 9, 2017 2:39 PM
**To:** Chuck Lollar <chuck@lollarlaw.com>
**Subject:** ACP Offer - Nelson County Creekside, LLC - 08-121-A033

Mr. Lollar,
Please see agreement and current offer attached for Nelson County Creekside, LLS tract 08-121-A033.
**Austin Russell**
**Sr. Right of Way Agent**
**Cell: 740-236-8022**
austinrussell85@gmail.com

# EXHIBIT "N"

## Chuck Lollar

**To:** Demian K. Jackson
**Subject:** RE: ACP representation

**From:** Demian K. Jackson <demianjackson@gmail.com>
**Sent:** Friday, March 3, 2017 11:46 AM
**To:** Charles Lollar <Chuck@lollarlaw.com>
**Subject:** ACP representation

Chuck,

As I have mentioned before, the present iteration of the latest route arcs through our property, thus gutting the vast majority of the investment value of our property. As a result, we are very concerned about being compensated for as much lost value as we can and based on the large size of our property and the long arc of the easement (about 3200 feet), we are concerned that there ultimately could be a significant disparity between the potential size of your contingency fee and the invested legal time required, particularly if Dominion chooses to initially greatly lowball us. We are confident that you would do an excellent job in getting us maximum compensation at the eminent domain phase and would be more than willing to discuss a fee arrangement which would guarantee that your compensation would exceed the legal hours invested in the result, but we are not willing to commit to a one third over Dominion's initial offer contingency fee at the present moment until we see what sort of initial offer we get. We think this is fair in view of the fact that a very long easement such as ours does not require proportionally greater legal hours relative to a normal length easement, but offers a larger contingent payout, which ultimately results in our losing more investment value, particularly if we are initially lowballed by Dominion. Further, since at this point we are basically a holdout in an area that Dominion has repeatedly tried to find a route through, we would think that we have a strong bargaining position. The foregoing concerns are also of even greater importance now that, with the passing of my grandmother last year, our LLC has a much higher number of owners (i.e. relatives who inherited her one third share) and we need to protect the new shareholders' investment value as well as our own.

Once we receive the initial offer from Dominion, we would want to discuss a revised contingency percentage, some form of a cap, and/or hourly representation. We, of course, understand that we would owe you for your past time if we cannot reach an agreement, but we are confident that we can arrive at a mutually beneficial arrangement that provides better protection to us, while guaranteeing that you are fully compensated and rewarded for your efforts on our behalf.

Thanks,
Demian

1

# EXHIBIT   "O"

## Chuck Lollar

**To:** Chuck Lollar
**Subject:** RE: ATTORNEY-CLIENT WORK PRODUCT AND PRIVILEGED CONFIDENTIAL COMMUNICATION – Atlantic Coast Pipeline, LLC gas pipeline easement from Nelson County Creekside, LLC Update on ACP project and summary of typical movement of your just compensation claim

**From:** Chuck Lollar [mailto:chuck@lollarlaw.com]
**Sent:** Friday March 30, 2018 5:23 PM
**To:** Demian K. Jackson <demianjackson@gmail.com>
**Subject:** Atlantic Coast Pipeline - Nelson County Creekside - New Offer

Demian,

I don't know where you're getting your information. I don't have hundreds of other clients. If I did that would not concern you. You better than most should know that is something I cannot discuss.

I called and left you a message. ACP told me it was not likely that the line would be moved again. We'll have to deal with it as now platted. You can continue to seek relief from FERC on that.

I've asked ACP to mediate your just compensation claim, as they do not appear interested at this point in negotiating at the level you suggest. You will need to obtain a written appraisal report. I can recommend some eminent domain appraisers, but you will have to make the decision as to that cost.

As I indicated in my message, please don't assume that I receive your emails daily. Over the majority of this past week I've traveled to areas that have no cell service and I'm not able to read emails for days. If I don't reply to yours it means I've not been able to read it or need time to reply. It does not mean I'm not working toward our common goal of getting to closure on your claim.

I'll go into more detail about this when I return home for the weekend.

You and your family enjoy your Easter and time together.

Chuck

On Mar 30, 2018, at 11:36 AM, Demian K. Jackson <demianjackson@gmail.com> wrote:

> I understand that you have hundreds of clients, but a quick email from someone (you or your assistant or your associate) is warranted in such a situation as this where time is of the essence. If Dominion made another counteroffer on Monday or provided any further information, we should not have to wait a week to hear about it. Unnecessary delays like this negatively affect our ability to bargain and make timely legal decisions.